IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA )
)
v. ) CASE NO. CR409-142
)
HANNES ROBINSON, )
)
Defendant. )
)

# ORDER

Before the Court is Defendant Hannes Robinson's Motion to Change Venue to the District of Utah, asking this Court to transfer his case pursuant to Federal Rule of Criminal Procedure 21(b). (Doc. 32.) The Government has responded in opposition. (Doc. 35.) Each Party has also filed a supplemental reply brief. (Docs. 36 & 37.) For the following reasons, Defendant's Motion is **DENIED**.[1]

## BACKGROUND

On June 5, 2009, Hannes Robinson was indicted, along with his codefendant, Cynthia Flanders Bear, on charges of conspiracy, wire fraud, and money laundering. (Doc. 3.) The conspiracy was premised on defrauding Bayer HealthCare ("Bayer"), which sold blood derivatives[2] to developing countries

---

[1] As this Court has ruled on the Motion to Transfer Venue, the Motion to Stay is **DISMISSED AS MOOT**.
[2] Blood derivatives are prescription drugs used to treat life-threatening diseases and illnesses such as cancer, hemophilia, hepatitis, and AIDS. (Doc. 3 at 1.)

at substantially reduced prices. (Id. at 1.) The Indictment charges that Defendant Robinson was a representative of Excim Trading Corporation of Miami, Florida, which represented itself to Bayer as a domestic exporter that specialized in the exportation of blood derivatives. (Id. at 2.) Further, Defendant Robinson is purported to have owned, operated, or controlled Cirrus, American Cardiovascular Consultants, and Intermountain Pharmacy, shell companies established to conceal the fraudulent sales of Bayer blood derivatives.[3] (Id. at 2.)

According to the Indictment, the co-conspirators first bought the derivatives at reduced prices for sale in developing countries and then falsely represented to Bayer that the pharmaceuticals were exported. (Id. at 4-5.) Instead of exporting the blood derivatives, they were retained in the United States where they were "laundered" through various shell companies and sold at domestic prices. (Id. at 5.) This generated a substantial profit, some of which was deposited in bank accounts in Savannah banks. (Id. at 5-6.)

Although the overt acts in furtherance of the conspiracy occurred across the country, several of the acts occurred in

---

[3] Defendant Bear is alleged to have been both the representative of Bio2000, a company that represented itself as a domestic exporter of blood derivatives; and to have owned, operated, or controlled American Medical Link, Pharmaceutical Distributors of Savannah, and Intermed Marketing of Savannah, shell companies established to conceal fraudulent sales of Bayer blood derivatives. (Doc. 3 at 2.)

2

Savannah. (Id. at 6-8.) That is, the co-conspirators deposited checks into Savannah bank accounts and incorporated a shell company headquartered in Savannah. (Id. at 6-7.) Further, the Indictment charges that, within the Southern District of Georgia, Defendants committed wire fraud and laundered money. (Id. at 8-12.)

On August 20, 2009, Defendant Robinson filed this Motion to Change Venue to the District of Utah—Defendant's home district. (Doc. 32.) The Government has responded in opposition to the Motion, contending transfer is inappropriate and will result in a multiplication of litigation. (Docs. 35 & 37.)

## ANALYSIS

Federal Rule of Criminal Procedure 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." The factors enumerated in Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964), guide the Rule 21(b) inquiry. Those factors are:

> (1) location of the [] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any

other special elements which might affect the transfer.

Id. The Court considers each factor in turn.

I.   Location of the Defendant

The Defendant in this case lives in Utah. (Doc. 32 at 4.) While, "[a] criminal defendant has no right to be tried in the place of his domicile," United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982), the "[Defendant's] place of residence is a factor to be given consideration," United States v. Lopez, 343 F. Supp. 2d 824, 835 (E.D. Mo. 2004). Accordingly, this factor cuts for transfer.

II.  Location of Possible Witnesses

The Government anticipates calling thirty to forty witnesses in its case-in-chief, twelve of whom live in Georgia.[4] (Doc. 35 at 8.) The Defense anticipates that "most" of its witnesses reside in Utah. (Doc. 36 at 3.) However, the parties agree that many of the witnesses in this case reside in the Southeast or on the East Coast. (Doc. 32 at 4-5; Doc. 35 at 8.) Further, neither side contends that a trial in either District will prevent witnesses from testifying, only that the necessary travel will be inconvenient. (Doc. 32 at 4; Doc. 35 at 8.)

---

[4] Both sides in this case have offered to provide preliminary witness lists to the Court. (Doc. 35 at 8 n.4; Doc. 36 at 3 n.3.) The Court declines the invitation and will assume that the parties are being truthful in their briefs.

4

However, given that most witness will have to travel regardless of the venue, this factor is neutral.

III. Location of Events Likely to be in Issue

The Government contends that many of the events at issue in this case occurred in Savannah, Georgia, noting that two of the corporations used to "launder" the pharmaceuticals were located in Savannah and that many of the sales occurred in Savannah. (Doc. 35 at 9-10.) Defendant claims that "noticeably absent from the discovery or indictment is any significant reference to areas or events within the Southern District of Georgia." (Doc. 32 at 6.) However, the Indictment is replete with references to activity in the Southern District of Georgia. (E.g., Doc. 3 ¶¶ 17, 18, 21(c), 21(g), 25, 26, 28.) While this was a national conspiracy, it is apparent that many of the relevant events occurred in Savannah. Accordingly, this factor cuts against transfer.

IV. Location of Documents and Records

Defendant contends that many documents and records needed to prepare his case are in Utah. (Doc. 32 at 6-7.) The Government argues that it subpoenaed most of Defendant's documents during its investigation and, therefore, many of the documents purported to be in Utah are here already. (Doc. 35 at 11.) The Government further notes that the removal of its documents from this district will result in delays in sentencing

5

several other related defendants. (Doc. 37 at 6-7.) Because Defendant's need for rebuttal documents is "necessarily speculative and susceptible to exaggeration", United States v. Benjamin, 623 F. Supp. 1204, 1214 (D.D.C. 1985), and the cost of moving the documents, which are important to the speedy disposition of other cases in this District, is high,[5] this factor cuts against transfer.

V. Disruption of Defendant's Business

Defendant argues that having to come to Savannah for a trial will cause significant disruption to his business. (Doc. 32 at 7.) The Government contends that Defendant will experience no more than the normal business inconvenience that is inevitable for a defendant in a criminal case. (Doc. 35 at 12.) However, the persuasive authority cited by the Government does not support the blanket proposition that because business inconvenience is inevitable, it is irrelevant. United States v. McDonald, 740 F. Supp. 757, 763 (D. Alaska 1990) (finding business inconvenience insignificant where others could run the business), United States v. Daewoo Indus. Co., 591 F. Supp. 157, 163 (D. Or. 1984) (finding that business inconvenience favored transfer). Accordingly, this factor cuts for transfer.

---

[5] Indeed, the United States Probation Office for the Southern District of Georgia confirms that a transfer will significantly complicate and delay the sentencing of related Defendants.

6

VI. Expense to the Parties

Defendant contends that he will incur significant expenses transporting his witnesses and himself to Savannah. (Doc. 32 at 8.) The Government responds that the expense of being tried away from home "is ordinarily of little relevance to a motion for a change of venue" and that the primary issue is the ability to endure additional expense, rather than the existence of the same. (Doc. 35 at 13.) Defendant responds that he lacks the means to mount a defense in Savannah, despite the fact that he is able to retain quality legal counsel both in Savannah and Utah. (Doc. 36 at 6.) Although this assertion is dubious given Defendant's retained counsel, the Court will assume, arguendo, that Defendant faces an economic hardship. Accordingly, this factor cuts for transfer.

VII. Location of Counsel

Defendant contends that his counsel is located in Utah and cannot work on this case should it remain here. (Doc. 32 at 8.) The Government responds that it is not even clear that the "attorneys referenced would actually represent [Defendant] at trial were it to be held in Utah." (Doc. 35 at 14.) This Court's rules allow for the admission of attorneys pro hac vice with appropriate local counsel. Accordingly, if Defendant would like his Utah attorney to represent him here, that possibility is open. Therefore, the Court finds this factor is neutral.

7

VIII. <u>Relative Accessibility of the Place of Trial</u>

Defendant contends that "it is no secret that airline travel to Savannah can be difficult" but concedes that this factor is "probably neutral." (Doc. 32 at 8.) Both Salt Lake City and Savannah, which has its own airport and is a center of tourist activity, are perfectly accessible from all major points in the United States. Accordingly, as Defendant concedes, this factor is neutral.

IX. <u>Docket Condition of Each District Involved</u>

Defendant contends that this District has more cases pending than the District of Utah and fewer judges to deal with those cases, suggesting transfer to Utah is appropriate. (Doc. 32 at 9.) The Government responds that these numbers are disingenuous and that this District disposes of criminal cases more expeditiously than the District of Utah. (Doc. 35 at 15 n.9.) The Government is correct to boast that this District handles its workload efficiently. As the Judicial Business of the United States Courts, 2008 Annual Report of the Director, Table D-6 shows, the median time for a case filed in this District to proceed to trial is 13.7 months as compared to 23.9 months in the District of Utah. That this Court can provide the most expeditious resolution of this case suggests that its retention is appropriate.

X.  Other Elements

Although mentioned under the factor of location of documents, it bears special mention that five of six related Defendants—one of whom is a codefendant—have all pled guilty or are scheduled to plead guilty in the Southern District of Georgia. Assuming Defendant Bear's plea is accepted, the transfer will create unnecessary duplication of the resolution of many sentencing issues, including the thorny calculations of loss amounts in this case. Moreover, given the likelihood of restitution as a part of any sentence in this case, long-term complications will occur as the disparate probation offices will need to coordinate payments. Further, if Defendant Bear's guilty plea is not accepted, duplicate trials will occur. All of these potentialities and inevitabilities cut heavily against transferring this case. See, e.g., United States v. Morrison, 946 F.2d 484, 489-90 (7th Cir. 1991) (noting that district court was correct to deny the transfer where it would result in "multiplication of litigation"), United States v. Kopituk, 690 F.2d 1289, 1322 (11th Cir. 1982) (noting that the policy favoring joint trials in conspiracy cases supports retaining jurisdiction in a case where severance is necessary to transfer the case with respect to a single defendant), United States v. Noetzel, 124 F.R.D. 518, 520 (D. Mass. 1989).

XI.     Balancing the Factors

The decision to transfer a case under Rule 21(b) is within the discretionary authority of a district court. Kopituk, 690 F.2d at 1322. In many cases, the factors do not point uniformly in one direction, and it "remains for the court to try to strike a balance and determine which factors are of greatest importance." United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990).

Here, the factors do not point uniformly for, or against, transfer. The factors favoring transfer are: (1) location of the Defendant, (2) disruption of Defendant's business, and (3) expense to the Defendant. However, in this Circuit, "[a] criminal defendant has no right to be tried in the place of his domicile . . . and the defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for change of venue." Bagnell, 679 F.2d at 832. The factors counseling against transfer are: (1) location of the events in issue, (2) location of documents, (3) docket condition of each district involved, and (4) the likelihood of sentencing delays and duplicative litigation. Of special import is the fact that transferring this case is likely to delay the sentencing of several other related Defendants and may result in duplicative trials. See Morrison, 946 F.2d at 489-90 (holding transfer was appropriate to avoid multiplication

10

of litigation), Kopituk, 690 F.2d at 1322 (noting that the policy favoring joint trials in conspiracy cases supports retaining jurisdiction in a case where severance is necessary to transfer the case with respect to a single defendant), Noetzel, 124 F.R.D. at 520. With the foregoing in mind and, after careful consideration of all the Platt factors, the Court finds that the most appropriate course of action is retention of this case. Accordingly, Defendant's Motion is **DENIED**.

## CONCLUSION

The Court has considered Defendant Hannes Robinson's Motion to Change Venue to the District of Utah. (Doc. 32.) For the above stated reasons, the Motion is **DENIED**.

SO ORDERED this 7th day of October, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA